CARDIFF ACQUISITIONS, INC. and Cardiff Equities Corporation, Plaintiffs-Counterclaim Defendants,

v.

Michael A. HATCH, Commissioner of Commerce of the State of Minnesota, Hubert H. Humphrey, III, Attorney General of the State of Minnesota, Defendants,

and

CONWED CORPORATION, Defendant, Counterclaimer and Third-Party Plaintiff,

v.

LEUCADIA NATIONAL CORPORATION, Third-Party Defendant.

No. 3–84 CIV 1507.

United States District Court, D. Minnesota, Third Division.

Nov. 15, 1984.

On Motion for Injunction Pending Appeal Nov. 15, 1984.

Maun, Green, Hayes, Simon, Johanneson & Brehl by Jerome B. Simon, St. Paul, Minn., and Weil, Gotshal & Manges by Dennis J. Block, Joseph S. Allerhand, New York City, for plaintiffs Cardiff Acquisitions, Inc. and Cardiff Equities Corp.

Hubert H. Humphrey, III, Atty. Gen., State of Minn. by Alan Gilbert, Jerome Getz, Charles Wikelius and Barry Greller, Sp. Asst. Attys. Gen., St. Paul, Minn., for defendants Michael A. Hatch and Hubert H. Humphrey, III.

Briggs & Morgan by Frank Hammond and Robert E. Woods, St. Paul, Minn., and Fried, Frank, Harris, Shriver & Jacobson by Gregory P. Joseph, New York City, for defendant Conwed Corp.

O'Connor & Hannan by Douglas Carnival, St. Paul, Minn., and Jones, Day, Reavis & Pogue by Erwin Griswold, Washington, D.C., and Leigh B. Trevor and John W. Edwards, II, Cleveland, Ohio, for amicus curiae Minnesota Wellspring.

### FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

ALSOP, District Judge.

The above-entitled action came on for hearing before the undersigned on Novem-

ber 14, 1984 upon the motion of plaintiffs for an order preliminarily enjoining each defendant from enforcing any of the provisions of the Minnesota Corporate Take-Overs Act, Minn.Stat. Ch. 80B, as amended, and preliminarily enjoining each defendant from enforcing the suspension order of November 8, 1984 issued by Minnesota Commerce Commissioner Michael A. Hatch.

On November 14, 1984, the court entered its order denying the plaintiffs' motion for a preliminary injunction stating that findings of fact and conclusions of law would follow.

Upon all files, records and proceedings had herein, the briefs of the parties and the arguments of counsel, the court makes the following:

## FINDINGS OF FACT

1. Conwed, Inc. (Conwed) is a Delaware corporation with its principal place of business in St. Paul, Minnesota. It is a diversified manufacturer of specialized interior and industrial products such as acoustical ceilings, office furniture and patented plastic knitting and tubes. Approximately 1500 people, most of whom work in Cloquet, Minnesota, are employed by Conwed.

2. Conwed has approximately 1250 shareholder accounts with about 1.8 million shares outstanding. At least 20% of its equity securities are beneficially held by residents of the State of Minnesota. Conwed's stock is publicly traded over the counter through the NASD Automated Quotation System (NASDAQ).

3. Cardiff Acquisitions, Inc. (CAI) was organized in October, 1984 and has its principal place of business in LaJolla, California. It is a wholly owned subsidiary of Cardiff Equities Corporation (CEC), a Delaware corporation which is listed on the American Stock Exchange and has its principal place of business in LaJolla, California. CEC and its parent, Leucadia, Inc. (Leucadia), own approximately 200,000 shares of Conwed common stock and hold options to purchase approximately 100,000 shares.

4. On November 4, 1984, plaintiffs commenced a nationwide cash tender offer for all outstanding shares of Conwed. The material terms of the tender offer are reflected in the offer to purchase which is an exhibit to the Schedule 14D–1 filed with the Securities and Exchange Commission (SEC) by plaintiffs.

5. Plaintiffs' tender offer is expressly conditioned upon a minimum number of shares being tendered which, together with the shares already owned by plaintiffs and their parent entity Leucadia, represent 51% of the outstanding shares of Conwed.

6. The tender offer by its terms expires on December 4, 1984, but plaintiffs may begin purchasing validly tendered shares which have not been withdrawn on November 18, 1984, the 16th business day from the commencement of the tender offer.

7. Minn.Stat. Ch. 80B is a part of the security statutes of the State of Minnesota. This legislation was substantially revised by the 1984 Minnesota legislature. *See* 1984 Minn.Laws Ch. 488.

8. The stated purposes of the Minnesota Legislature in enacting Chapter 488 are to:

(1) assure that the impacts of take-overs on all affected constituencies are identified and disclosed prior to the consummation of these transactions; (2) provide to shareholders both necessary information and the opportunity to thus cast fully informed votes on any take-over transactions; (3) encourage reasoned decision-making by assuring equal financial treatment of all shareholders similarly situated at the time any take-over attempt is initiated; and (4) amend Minnesota Statutes, Chapters 80B and 302A to conform with the requirements suggested by decisions of the Supreme Court of the United States.

1984 Minn.Laws Ch. 488, § 1(2).

9. Chapter 80B applies to "take-over offers," which are defined as any offer to acquire equity securities from Minnesota residents if, after the offer, the offeror would beneficially own 10% or more of any class of securities of the "target company,"

or would have increased its ownership of such class by more than 5%.

10. A corporation is a "target company" for purposes of Chapter 80B if: (1) its equity securities are "publicly traded;" and (2) at least 20% of its equity securities are beneficially owned by Minnesota residents; and (3) it has substantial assets in Minnesota.

11. Chapter 80B makes it unlawful to make a take-over offer or to acquire equity securities pursuant to such an offer unless the offer is "effective." A take-over offer is "effective" when the offeror files with the Minnesota Commissioner a Registration Statement containing the information prescribed by Chapter 80B.

12. Section 80B.03(4) authorizes the Commissioner to suspend the effectiveness of the take-over offer if the Registration Statement does not contain all material information concerning the offer. However, the Commissioner must suspend an offer, if at all, within three calendar days after filing of the Registration Statement, must hold a hearing within ten calendar days of the suspension, and must rule on the adequacy of disclosure within three calendar days thereafter (but in no event later than sixteen days after suspension).

13. If the Commissioner finds that the Registration Statement does not comply with Chapter 80B, he must suspend the offer subject to the right of the offeror to reinstate the offer by making adequate disclosures.

14. These time constraints ensure that the Commissioner's administrative process will in all cases be completed within 19 calendar days, prior to the expiration of the minimum 20 business days offering period established by the SEC.

15. Section 80B.05(4) prohibits any person from soliciting either acceptance or rejection of the offer before an offer becomes effective or while it is suspended.

16. The disclosures required by §§ 80B.03(2) and (6) largely parallel those required by offerors by SEC Schedule 14D–1.

17. In addition to the disclosures required by the SEC, Minnesota requires any offeror seeking control of a Target to disclose the economic effects of any contemplated changes in the target's business. The Legislature found such disclosures to be material to resident investors. 1984 Minn.Laws, Ch. 488, §§ 1(1) and (2).

18. On November 5, 1984, plaintiffs filed a Registration Statement with the Commissioner pursuant to Minn.Stat. 80B and a Schedule 14D–1 with the SEC all pertaining to its tender offer for shares of stock of defendant Conwed. On November 8, 1984, the Commissioner issued an order, pursuant to the take-over act, summarily suspending the effectiveness of the plaintiffs tender offer in Minnesota and further scheduling a hearing pursuant to the take-over act to be conducted on November 16, 1984 at 10:00 a.m. On November 12, 1984, the Commissioner issued his memorandum to the November 9, 1984 order.

19. On November 15, 1984, all parties agreed that the court's order herein denying plaintiffs'. motion for a preliminary injunction may be deemed dispositive of the plaintiffs' request for a permanent injunction.

Based upon the above Findings of Fact, the court makes the following:

## CONCLUSIONS OF LAW

1. In determining whether to issue a preliminary injunction this court must consider "... (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems Inc.*, 640 F.2d 109, 114 (8th Cir.1981). The Eighth Circuit further instructs that in balancing the equities in a particular case, no single factor should be determinative. *Id.* However, because of the balance that is struck when considering the other three factors, the critical factor in this case is the third,

"the probability that movant will succeed on the merits."

2. It is improbable that the movant plaintiffs will succeed on the merits of their case. To do so would require this court to find that the Minnesota Corporate Take-Overs Statute, Minn.Stat. § 80B.01 *et seq.* violates the commerce or supremacy clause of the United States Constitution.

■ A. The Minnesota Corporate Take-Overs Statute, Minn.Stat. § 80B.01 *et seq.* does not violate the commerce clause of the United States Constitution. The commerce clause provides that "Congress shall have Power ... to regulate Commerce ... among the several states." U.S. Const., Art. I, § 8, cl. 3. The commerce clause prohibits the direct regulation of interstate commerce by a state. *Shafer v. Farmers Grain*, 268 U.S. 189, 199, 45 S.Ct. 481, 485, 69 L.Ed. 909 (1925). The Minnesota Take-Overs Act does not directly regulate interstate commerce. Rather, its scope is limited to Minnesota shareholders of companies that have a substantial nexus with the State of Minnesota. Minnesota claims no right under the statute to suspend the effect of a tender offer with regards to shareholders outside of Minnesota. While the effect of suspending a tender offer as to Minnesota shareholders may very well effect commerce, that effect is incidental and not direct. When the Supreme Court struck down the Illinois Take-Over Act in *Edgar v. Mite Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), a majority of the Court could be mustered only to strike the statute as an undue indirect burden on interstate commerce. The Illinois Act, which authorized the Illinois Secretary of State to suspend a tender offer on a nationwide basis, was not found to be a direct burden on commerce by a majority of the court. *Id.* at 640–43, 102 S.Ct. at 2640–42. Therefore, this court concludes that the Minnesota Take-Overs Act, which is much more limited in scope than the Illinois Act, burdens only incidentally interstate commerce.

The Supreme Court instructs that "[W]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Within the context of this case, then, this court must balance the burdens imposed upon interstate commerce by the Minnesota Take-Overs Act with the local benefits derived therefrom.

The most significant burden which the Minnesota Take-Overs Act imposes on interstate commerce is that a suspension order pursuant to it may effectively block the consummation of a tender offer. In that instance, shareholders who are residents of states other than Minnesota may be prevented from selling their shares at a premium. As applied to this case, if plaintiffs are unable to obtain a 51% interest in defendant Conwed due to the suspension of the tender offer in Minnesota, shareholders that actually tender their shares will lose the premium that plaintiffs are willing to pay for them. A second burden on interstate commerce is that the very existence of the Minnesota Act may tend to limit the number of take-over attempts of corporations which have a substantial nexus with the state. The Supreme Court has recognized this as a burden on commerce in that it lessens the incentive of incumbent management to perform well and to keep stock prices at their optimal level. *See Edgar v. Mite Corp.*, 457 U.S. at 643, 102 S.Ct. at 2641.

On the other hand, Minnesota has a clearly recognized legitimate interest in protecting local investors. *Id.* at 644, 102 S.Ct. at 2642. Under the Minnesota Take-Overs Act, the state provides that protection by requiring an offeror to make significant disclosures to Minnesota shareholders and by providing a mechanism to insure that the disclosures are adequate and accurate. It should be noted that the disclosures required are for the most part parallel to those required by the Securities and

Exchange Commission under the Williams Act. In addition, however, the Minnesota Act requires the offeror to disclose the impact that the proposed tender offer will have on Minnesota. 1984 Minn.Laws Ch. 488, §. 8. This is a pertinent disclosure to Minnesota shareholders, who unlike out of state investors, may be very interested in the effect the tender offer will have on Minnesota.

The court concludes that the Minnesota Corporate Take-Overs Statute imposes only incidental burdens on interstate commerce which are outweighed by the legitimate local interests that are protected by it. Therefore, the Minnesota Corporate Take-Overs Act does not violate the commerce clause of the United States Constitution.

■ B. The Minnesota Corporate Take-Overs Statute, Minn.Stat. § 80B.01 *et seq.* does not violate the supremacy clause of the United States Constitution. The supremacy clause provides that "this Constitution and laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land ..., anything in the Constitution or law of any state to the contrary notwithstanding." U.S. Const. Art. VI. A state statute may be found to be contrary to the United States Constitution or a federal statute and thus preempted if Congress has clearly ordained either expressly or impliedly its intent to solely regulate an area. *Jones v. Rath Packing,* 430 U.S. 519, 525–26, 97 S.Ct. 1305, 1309–10, 51 L.Ed.2d 604 (1977). As noted by the Eighth Circuit Court of Appeals, the Congress has not chosen, either expressly or impliedly, to prohibit states from regulating tender offers. *National City Lines, Inc. v. LLC Corporation,* 687 F.2d 1122, 1129 (8th Cir.1982). Further § 28(a) of the Securities Exchange Act of 1934 specifically permits states to enact tender offer legislation consistent with the Act.

■ A state statute also may be found to be contrary to the United States Constitution or a federal statute if the state statute conflicts with federal law and such conflict makes compliance with both state and federal law impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963) or such conflict "... stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). In the present case, the court must first determine the extent of the conflict between the Williams Act and the Minnesota Corporate Take-Overs Statute and then determine whether such conflict makes compliance with both impossible or whether the Minnesota Act stands as an obstacle to the purposes and objectives of the Williams Act. In making these determinations, this court is guided by the decision of the Eighth Circuit Court of Appeals in *National City Lines, Inc. v. LLC Corporation,* 687 F.2d 1122 (8th Cir.1982).

In *National City Lines,* the Eighth Circuit held that the Missouri Take-over Bid Disclosure Act conflicted with the Williams Act and was therefore unconstitutional under the supremacy clause. *Id.* at 1128–33. The court noted that in enacting the Williams Act the Congress was adopting a policy of neutrality towards tender offers and that the goal of the Act was to avoid favoring either the offeror or incumbent management. *Id.* at 1129. Further, the court found that the Williams Act was designed to require fair and full disclosure for the benefit of shareholders. *Id.* The Minnesota Act is consistent with the purposes of the Williams Act. The Minnesota Act is essentially a disclosure statute that requires disclosure parallel to that in the Williams Act. The purpose of the disclosure requirements under both acts is shareholder protection. The principal additional disclosure required under the Minnesota Act (the effect that a take-over will have on the state) is not in any way inconsistent to the purposes of the disclosure requirements under federal law and serves to protect the unique interests of Minnesota shareholders. This court does not believe that the additional disclosure required by the Minnesota Act will result in the share-

holders receiving a mass of irrelevant information that will serve to confuse rather than enlighten. *See id.* at 1131.

The Missouri Statute at issue in *National City Lines* ran afoul of the supremacy clause because it unduly delayed both the commencement and consummation of effected tender offers. *Id.* at 1130. Specifically, the Missouri Statute had a minimum of a 20-day waiting period after the offeror submitted its materials to the state, and that period of time could be extended if the Missouri commissioner held an adequacy hearing on the disclosure materials. An adequacy hearing under the Missouri Statute could be demanded by any aggrieved person. *Id.* at 1130. The Eighth Circuit noted that these provisions upset the balance the Congress intended when passing the Williams Act because the extended delays under the statute threatened "... the viability of tender offers by discouraging the tender offeror from completing the offer once made." *Id.* at 1131.

The Minnesota Take-Overs Act does not suffer from the same infirmities. While the Minnesota Act does provide for an adequacy hearing, it can be called only by the Minnesota Commissioner of Commerce, it must be called for within three calendar days of the filing of the registration statement, and the disclosure issue must be ultimately decided within 16 days of the filing of the registration statement. 1984 Minn.Laws Ch. 488, §§ 6, 7. During the pendency of the hearings, the Commissioner may suspend the tender offer as to Minnesota shareholders only. The timetable established in the Minnesota Act does not conflict with the timetable under the Williams Act. There is no precommencement filing requirement in Minnesota as there was in Missouri. The entire hearing process under the Minnesota Act is completed before the offeror is allowed to take down shares under the Williams Act. If the disclosures are ultimately found to be inadequate, the suspension of the offer is effective only in Minnesota. However, even this suspension, and the delay accompanying it do not conflict with the Williams

Act because the Williams Act goal of investor protection is furthered.

This court is cognizant of the fact that the Minnesota Commissioner is given the power to change the time limits under the statute, and that in doing so might bring the statute into conflict with the Williams Act. 1984 Minn.Laws Ch. 488, § 7. To date, however, the Commissioner has worked to expedite the hearing process under the statute and this court will not presume that he will do anything different in the future.

The Missouri Act at issue in *National City Lines* conflicted with the Williams Act because it contained numerous provisions that tended to favor incumbent management over the offeror. *National City Lines v. LLC Corporation*, 687 F.2d at 1132–33. As a result, it violated the congressional policy of neutrality. Unlike the Missouri Statute, the Minnesota Take-Overs Act does not have a precommencement filing requirement, permit incumbent management to invoke the hearing process, or require the offeror's communications to be filed with the state ten days prior to distribution while exempting the communications of incumbent management. Minnesota imposes its antifraud provisions found at 1984 Minn.Laws Ch. 488, § 9, on both incumbent management and the offeror. In particular, during a suspension of an offer, neither incumbent management nor the offeror may solicit the acceptance or rejection of the offer. *Id.* Therefore, the Minnesota Statute, while different from the Williams Act in some respects, does not shift the balance between incumbent management and the offeror created by the Williams Act.

The plaintiff has argued that since the Minnesota Take-Overs Statute exempts self-tenders from its coverage, it therefore upsets the balance between incumbent management and the offeror. *See* 1984 Minn.Laws Ch. 488, § 2. This argument fails because the regulation of self-tender is provided for in the Minnesota Blue Sky Law, Minn.Stat. Ch. 80A. Further, the exemption provided in the statute is not in-

consistent with the disclosure requirements in the Williams Act and the Minnesota Act, in that the shareholders of a target already know a great deal of information regarding the company from annual reports, quarterly statements, proxy statements and alike.

In conclusion, while there may exist some conflicts between the provisions of the Williams Act and the Minnesota Take-Overs Act, the Supreme Court instructs that "... proper approach is to reconcile the operation of both statutory schemes with one another rather than holding one completely ousted." *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127, 94 S.Ct. 383, 389, 38 L.Ed.2d 348 (1973). That can clearly be done in this case. The Minnesota Act does not sufficiently conflict with the Williams Act so as to make compliance with both impossible or to frustrate the purposes of it. This court therefore holds that the Minnesota Corporate Take-Overs Statute does not violate the supremacy clause.

3. There is a threat of irreparable harm to the plaintiffs in this case. Pursuant to the Minnesota Act, the plaintiffs' tender offer has already been suspended. That suspension, if made permanent, may be sufficient to defeat their tender offer. Further, the publicity that has resulted from the suspension certainly has harmed the viability of the plaintiffs' tender offer.

4. If, however, the preliminary injunction is granted, the defendant Conwed will in all likelihood be harmed. Under the circumstances, plaintiffs would be permitted to pursue its tender offer based on disclosures that are allegedly inadequate. That, in turn, could result in the take-over of Conwed.

5. The public interest will be served by denying the preliminary injunction. Both the Williams Act and the Minnesota Take-Overs Statute provide that the public interest is best served by providing the investing public with accurate and necessary information upon which to make a decision to tender shares. That purpose will be served

by allowing the Minnesota Commissioner to proceed with his enforcement of the Minnesota Corporate Take-Overs Statute.

 6. In conclusion, pursuant to the test discussed by the Eighth Circuit Court of Appeals in *Dataphase Systems, Inc. v. C L Systems Inc.*, 640 F.2d 109, 114 (8th Cir.1981), a preliminary injunction shall not be issued in this case. There is no doubt that this will result in harm to the plaintiffs, in that it threatens the viability of their tender offer. On the other hand, that harm is balanced by the potential harm to the defendant Conwed that would result from it being taken over pursuant to an illegal tender offer. It is likely that the plaintiffs will not succeed on the merits because the Minnesota Take-Overs Statute appears to meet Constitutional muster under both the commerce and supremacy clauses of the United States Constitution. Finally, the public interest will be best served by denying the injunction in that by doing so this court can better assure that the instant tender offer will be based on adequate and accurate disclosure.

Upon the foregoing,

IT IS ORDERED That the plaintiffs' application for a preliminary and a permanent injunction be and the same hereby is in all things denied, and the plaintiffs' Complaint seeking injunctive relief is dismissed.

### ON MOTION FOR INJUNCTION PENDING APPEAL

Plaintiffs have referred the court to Rule 8 of the Rules of Appellate Procedure and have applied for an injunction in the form originally sought pending their appeal of this court's order of November 14, 1984 to the Eighth Circuit Court of Appeals. The plaintiffs seek relief under Fed.R.Civ.P. 62(b).

In *Reserve Mining Company v. United States*, 498 F.2d 1073 (8th Cir.1974), the standards for the grant of such extraordinary relief were delineated. It was there

pointed out that the party seeking such relief must establish:

(1) A strong showing that he is likely to succeed on the merits of the appeal;

(2) A showing that, unless a stay is granted, he will suffer irreparable injury;

(3) A showing that no substantial harm will come to interested parties; and

(4) A showing that a stay will do no harm to the public interest.

Whether or not the first requirement must be met when the stay or injunction pending appeal is sought from the same trial judge who immediately prior thereto has found that the applicant is unlikely to succeed on the merits, is an issue worthy of further consideration. *See Geiger v. City of Egan,* 3–79 Civ. 361 (D.Minn. Sept. 20, 1979). It need not, however, be resolved at this time in this action by reason of the plaintiffs' inability to meet remaining requirements of the *Reserve* standard.

The underlying purpose of Rule 62(c) is to give the trial court the opportunity to maintain the status quo with the least harm to the parties and the public pending appropriate review by the appellate court. In a proceedings involving a corporate tender offer, the maneuvers of the parties both within and outside of the court proceedings move so swiftly that it becomes difficult at any one moment to discern what the status quo is. The court's concern in this setting, of necessity, looks toward the third of the *Reserve* standards.

■ The court finds that the plaintiffs have failed to establish that no substantial harm would come to the interests of the public in the ongoing implementation of the Minnesota Take-over Act if an injunction enjoining the enforcement of the act were to issue pending appeal.

Accordingly,

The motion of the plaintiffs for an injunction pending appeal pursuant to Fed.R. Civ.P. 62(c) and Rule 8 of the Rules of Appellate Procedure is in all things DENIED.