CARDIFF ACQUISITIONS, INC., and
Cardiff Equities Corporation,
Appellees,

v.

Michael A. HATCH, Commissioner of
Commerce of the State of Minnesota,
Hubert H. Humphrey III, Attorney
General of the State of Minnesota, and
Conwed Corporation, Appellants.

CONWED CORPORATION, Appellant,

v.

LEUCADIA NATIONAL
CORPORATION,
Appellee.

No. 84–5229.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1984.

Decided Dec. 14, 1984.

Gregory P. Joseph, New York City (argued), Robert E. Woods and Leonard J. Keyes, St. Paul, Minn., for appellants.

Irwin H. Warren, New York City, for appellees.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

## ORDER

### I. BACKGROUND.

This matter is before this Court for the second time. When it was initially before us, we held that the Minnesota Corporate Take-Overs Act, 1984 Minn.Laws ch. 488, to be codified as Minn.Stat.Ann. chs., 80B and 302A, was not, for the most part, facially unconstitutional and that the Commerce Commission of the State of Minnesota could require disclosures in addition to those required under the Williams Act, 15 U.S.C. §§ 78m(d)–(e) and 78n(d)–(f) (1982), so long as the disclosures are purely factual and not judgmental in nature, are not inconsistent with the Williams Act, and are not unduly burdensome to interstate commerce. *Cardiff Acquisitions, Inc. v. Hatch*, 751 F.2d 906 (8th Cir.1984), affirming in part and reversing in part, 597 F. Supp. 1493. Applying these standards, we held that the Commissioner's decision that Cardiff failed to disclose with adequate specificity the source of its financing was not an abuse of discretion. *Id.* at 915. We further held that the Commissioner had erred in requiring Cardiff to go beyond the disclosure of "any material pending legal or administrative proceedings in which the offeror or any of the subsidiaries is a party" by requiring them to evaluate any pending lawsuits. *Id.* at 916. We finally expressed our view that disclosure of a potential two-tier offer was not required by the Minnesota Act, but we declined to rule on the

substantive provision proscribing two-tier offers. *Id.* at 916.

Since our order was issued on November 29, 1984, no additional filings have been made with the Minnesota Commissioner of Commerce. Meanwhile, a proceeding was pending before the United States District Court for the District of Minnesota in which Conwed sought to enjoin Cardiff from going forward with its tender offer in states other than Minnesota on the theory that Cardiff had violated the Williams Act by failing to make appropriate disclosures, and had or would violate the Federal Reserve Board's margin regulations, promulgated pursuant to section 7 of the Exchange Act, 15 U.S.C. § 78g (1982), and the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 through 64 and 80b-1 through 21 (1982). On November 28, 1984, the district court denied the motion for a preliminary injunction. In its opinion, the court outlined in some detail the assertions and arguments of the parties and, quoting *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981), set forth the standards that should be used by it in deciding the motion for a preliminary injunction. It concluded:

> There is a threat of irreparable harm to the movant Conwed. Without the preliminary injunction, it is possible that Conwed will be taken over by a successful tender offer by Cardiff based on allegedly inadequate disclosure before a trial on the merits can be held. * * * [T]here is the potential for injury to Conwed even if Cardiff is unable to purchase a controlling interest in Conwed. For example, Conwed may find it necessary to buy out whatever interest Cardiff obtains in order to effectively conduct its business. That could result in a substantial outlay of capital by Conwed.

> The threat of irreparable injury to Conwed, however must be balanced with the injury to Cardiff and Leucadia if the injunction is granted. The balance in this case tips in favor of Cardiff and Leucadia. Cardiff and Leucadia have already had their tender offer suspended as to Minnesota shareholders. An injunction by this court would enjoin Cardiff's tender offer nationwide and effectively defeat it. Thus, while there is a potential for injury to Conwed if the injunction is not granted, it is almost certain that Cardiff and Leucadia will be injured if it is granted; and that injury will be severe.

> [E]ither Conwed or Cardiff and Leucadia could prevail on the merits.

> Finally, the public interests in this case are conflicting. The investing public must be protected from false and misleading tender offers. A principal purpose of the Williams Act is to assist a shareholder, faced with a tender offer, to make a well informed decision as to whether to tender his or her shares. * * * On the other hand, the public interest is also served by allowing the investing public to consider the merits of a tender offer and, in appropriate cases, to tender their shares at a premium. * * * Further, shareholders who tender their shares based on what is later determined to be false information have available to them an action for damages.

> In conclusion, the balance of equities in this case does not so favor the movant Conwed as to require this court to enter a preliminary injunction to prevent injustice.

After this Court's order of November 29, 1984, concerning disclosure under the Minnesota Act, Conwed requested the district court to reconsider its denial of its motion for an injunction under the Williams Act. The district court denied the request. Conwed immediately appealed and we granted an expedited hearing on December 4, 1984. After hearing from both parties, a single Judge of this Court entered the following order:

> That the request for an order enjoining the further acquisition of stock by Cardiff during the current tender offer period is denied.

> That if Cardiff elects to extend the termination date of its tender offer, Cardiff is temporarily enjoined from accepting any

shares for payment tendered after midnight December 4, 1984, until further order of the Court.

This matter has now been heard by a three-judge panel.

## II. DISCUSSION.

The issue is whether the district court erred in denying Conwed's motion for a preliminary injunction and whether the temporary order issued by a single Judge of this Court should remain in effect pending the remand for resolution of the merits, or whether it should be modified or dissolved. In deciding this issue, we should affirm the district court's denial of a preliminary injunction unless there has been an abuse of discretion or a clear error of law.

Conwed claims that the district court clearly abused its discretion by failing to enjoin the tender offer on the ground that Cardiff's 14D-1 filing is inadequate in four respects:

(1) *Source of Financing.*

■ Item 4 on Schedule 14D-1, in relevant part, requires the following disclosure:

*Item 4. Source and amount of funds or other consideration.* (a) State the source and the total amount of funds or other consideration for the purchase of the maximum number of securities for which the tender offer is being made.

(b) If all or any part of such funds or other consideration are or are expected to be directly or indirectly, borrowed for the purpose of the tender offer:

(1) Provide a summary of each loan agreement or arrangement containing the identity of the parties, the term, the collateral, the stated and effective interest rates, and other material terms or conditions relative to such loan agreement; and

(2) Briefly describe any plans or arrangements to finance or repay such borrowings, or if no such plans or arrange-

ments have been made, make a statement to that effect.

17 C.F.R. § 240.14d–100, Item 4 (1984).

Conwed argues that Cardiff's original 14D-1 filing does not comply with Item 4(b)(1). *See also* Schedule 14D-1, Item 11(b). 17 C.F.R. § 240.14d–100, Item 11(b) (1984) (requiring any loan agreement referred to in Item 4 to be attached to Schedule 14D-1 as an exhibit). In *Cardiff Acquisitions, Inc. v. Hatch,* 751 F.2d 906 (8th Cir.1984), we agreed with Minnesota Commissioner of Commerce Michael A. Hatch that Cardiff had not adequately complied with subsection (b) of 1984 Minn.Sess.Law Serv., ch. 488, § 80B.03—which parallels Item 4(b)(1) of Schedule 14D-1—because "if Cardiff has an agreement with National to advance Cardiff funds to affect the purchase agreement, Conwed's Minnesota shareholders must be informed of the terms of this agreement." *Id.,* at 915. On November 30, 1984, Cardiff publicly announced the terms of a written agreement under which Leucadia would advance Cardiff all funds in excess of $2,000,000 needed for the tender offer. Shortly thereafter, Cardiff filed with the Securities and Exchange Commission (S.E.C.), this agreement and related documents as an amendment to its 14D-1.

Our view regarding Cardiff's disclosure under the Minnesota Act of its source of financing and the almost identical language found in the state and federal statutes leads us to believe that Cardiff's initial source-of-financing disclosure contained in its Schedule 14D-1 was deficient. As stated above, however, Cardiff has supplemented this disclosure, and we reserve to the district court the decision as to whether the supplemental disclosure satisfies the requirements of the Williams Act. Conwed argues that Cardiff's amended 14D-1 is still inadequate because Cardiff has not sufficiently disclosed how it will repay the Leucadia loan. While this claim may have merit, this issue will be decided by the district court on remand. We are not convinced that the district court abused its

discretion in refusing to enjoin the tender offer until Cardiff makes additional disclosures on its ability to repay.

■ Next, *we recognize that between* November 28, 1984 (when Cardiff began to take down tendered Conwed shares), and December 3, 1984 (when Cardiff filed its Schedule 14D–1 amendment with the S.E. C.), Cardiff purchased thousands of tendered Conwed shares. The Williams Act anticipates prompt notification to shareholders of material changes in the information filed with the S.E.C., *see* 17 C.F.R. §§ 240.14d–4(c),–5(b)(6),–9(b) (1984), and we leave it to the district court to determine whether this was done. We do rule, however, that these shareholders, who tendered shares prior to receiving notification of the 14D–1 amendment, must be given fifteen days to withdraw their tenders if they so desire in light of the terms of the Cardiff-Leucadia financing agreement. *Life Investors, Inc. v. AGO Holdings, N.V.*, Fed.Sec.L.Rep. ¶ 98,356 (8th Cir.1981) (ordering additional fifteen day withdrawal period). *See* 17 C.F.R. § 240.14d–7(a)(1) (withdrawal rights until fifteen business days from commencement of tender offer).

### (2) *Identity and Background of the Bidder.*

Conwed claims that Cardiff has not complied with Item 2 of Schedule 14D–1 by failing to disclose material information relating to the integrity and competence of Cardiff's management. Specifically, Conwed alleges that Cardiff did not adequately disclose that the "control group" (the few individuals who control Cardiff and Leucadia) appropriated $5.4 million from Leucadia to pay off a $4.5 million jury verdict against certain members of the control group and a $900,000 fraud claim settlement of a control group member. Conwed further alleges that Cardiff did not disclose that members of the control group used $5 million of Leucadia's cash to purchase a bankrupt corporation, Terracor, in order to avoid a $100 million lawsuit. Conwed finally alleges that Cardiff did not disclose that control persons converted a Cardiff note held by Leucadia into preferred stock in Cardiff with extraordinary voting rights in disregard of the rights of Cardiff's minority shareholders.

In considering the $5.4 million settlements, we initially direct the district court to Instruction C for complying with Schedule 14D–1, which provides in part:

> If the statement is filed by a corporation, or if a person referred to in (i), (ii), (iii), or (iv) of this Instruction is a corporation, the information called for by the above mentioned items shall be given with respect to: (a) each executive officer and director of such corporation; (b) each person controlling such corporation; and (c) each executive officer and director of any corporation ultimately in control of such corporation. A response to an item in the statement is required with respect to the bidder and to all other persons referred to in this instruction unless such item specifies to the contrary.

17 C.F.R. § 240.14d–1, Instruction C (1984).

This provision makes clear that requiring disclosure with respect to members of the so-called "control group" is proper. However, information relating to only certain matters involving those persons must be disclosed. Item 2(f) of Schedule 14D–1 requires "the person filing this statement or *any person enumerated in Instruction C*" (emphasis added) to disclose:

> [w]hether or not, during the last 5 years, such person was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting activities subject to, federal or state securities laws or finding any violation of such laws; and, if so, identify and describe such proceeding and summarize the terms of such judgment decree or final order.

Additional disclosures with respect to legal proceedings may also be required by Items 10(g) and (f) of Schedule 14D–1. 17 C.F.R. § 240.14d–100, Items 10(g) and (f) (1984).

■ Cardiff's disclosures with respect to the $5.4 million settlements are contained within an appendix to its 14D–1 filing. Schedule 14D–1's General Instruction B provides, in relevant part, that "[i]nformation contained in exhibits to the statement may be incorporated by reference * * * unless it would render such answer misleading, incomplete, unclear or confusing. Material incorporated by reference shall be clearly identified in the reference by page, paragraph, caption or otherwise." Conwed alleges that Cardiff's disclosures with respect to the $5.4 million settlements are not clearly identified by references to page, paragraph, caption or otherwise, and are misleading, incomplete, unclear and confusing because they are "camouflaged" within the densely worded appendix and because they are evaluative. For example, Cardiff's disclosure of the settlement asserts that the allegations in the suit were without merit. We agree with Conwed that Cardiff's disclosures of the $5.4 million lawsuits might not comply with the Williams Act because Schedule 14D–1 requires disclosures to be made clearly and factually and because the purpose of the disclosures—to inform shareholders—also supports clear and concise disclosure of material information. However, we cannot agree that the issue is so clear that we must find the district court abused its discretion by failing to enjoin the tender offer pending resolution of the merits. We leave to the district court the task of resolving the merits of this issue on remand.

■ Conwed also alleges that Cardiff's original 14D–1 discloses none of the facts with respect to the Terracor and note transactions, and that these disclosures are material because they relate to the integrity and competence of the control group and are required by section 14(e) of the Williams Act, 15 U.S.C. § 78n(e) (1982) and Items 2(f) and 10(f) on Schedule 14D–1. 17 C.F.R. § 240.14D–100, Items 2(f) and 10(f) (1984). *See also* H.R. No. 1711, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2811, 2812 (legislative history of Williams Act; "The compe-

tence and integrity of a company's management, and of the persons who seek management positions, are of vital importance to stockholders. Secrecy in this area is inconsistent with the expectations of the people who invest in the securities of publicly held corporations and impairs public confidence in securities as a medium of investment."); *Berman v. Gerber Products Co.*, 454 F.Supp. 1310, 1322–23 (W.D. Mich.1978). Cardiff made disclosures with respect to the note transaction in an amendment to its Schedule 14D–1 filed with the S.E.C. on December 3, 1984, and apparently mailed this information to shareholders on December 4. Our order for an additional fifteen day withdrawal period for those shareholders who tendered before the 14D–1 amendment with respect to source of funds will, as a practical matter, also give shareholders a chance to withdraw if they believe the note transaction alters their decision to tender. The district court on remand must determine if the Terracor and note disclosures are required by the Williams Act and, if so, whether the disclosures with respect to the note transaction are adequate and whether disclosures with respect to the Terracor transaction should be ordered.

(3) *Purposes, Plans and Proposals.*

■ Conwed argues that because Cardiff has now waived its original minimum condition (that it would not purchase tendered Conwed shares unless it obtained 51% of Conwed's shares), it now must disclose additional information relating to its purposes, plans and proposals upon obtaining a sizable minority interest in Conwed. We agree that Cardiff must supplement its 14D–1 filing to the extent that Cardiff's decision to waive the 51% minimum condition has materially altered any information contained in the 14D–1 filing, including those relating to Cardiff's purposes, plans and proposals. However, while there may have been a material change in the purpose or purposes of the tender offer as a result of Cardiff's willingness to purchase a minority interest in Conwed, we doubt whether there was a material change in Cardiff's

plans or proposals which would result in the type of corporate changes specified in Item 5 of Schedule 14D-1. Few, if any, of the corporate changes specified could be effected without a controlling interest. Thus, it seems Cardiff's decision to accept less than 51% of Conwed's stock would not have prompted Cardiff to adopt any new plans or proposals that would result in the specified corporate changes; however, if Cardiff has done so, it must disclose those plans or proposals in a supplemental filing. Even if Cardiff is required to so amend its disclosures, however, we do not think this provides a sufficient basis to enjoin the tender offer until such disclosures are made. We leave the consideration of the merits of this issue to the district court.

#### (4) *Margin Rules.*

■ Item 10(d) of Schedule 14D-1 requires disclosure of: "The applicability of the margin requirements of section 7 of the Act and the regulations promulgated thereunder." 17 C.F.R. § 240.14d-100, Item 10(d) (1984). Cardiff's Schedule 14D-1 response to Item 10(d) states: "Not applicable."

Conwed claims that this is a violation of the Williams Act because Leucadia's loan agreement with Cardiff will violate the margin rules, found at section 7 of the Exchange Act, 15 U.S.C. § 78g (1982) and rules and regulations promulgated thereunder by the Federal Reserve Bank. 12 C.F.R. §§ 107.1, 107.5 and 224 (1984). While we agree that Cardiff's response "Not applicable" may be inadequate under the Williams Act, we believe that the issue is not so clear that we may find the district court abused its discretion by failing to enjoin the tender offer pending resolution on the merits. The district court must address the merits of this issue on remand.

■ We now turn to the alleged substantive violations of the margin rules, 15 U.S.C. § 78g (1982) and 12 C.F.R. §§ 207.2, 207.5 and 224 (1984), and the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 through 64 and 80b-1 through 21 (1982). As noted above, Conwed alleges that Leucadia's loan agreement with Cardiff will violate the Federal Reserve Bank's margin

rules and regulations because over 50% of the tender offer funds will be provided by the loan and because, as a matter of "economic reality," the loan is indirectly secured by the Conwed stock to be purchased. We noted above that this may be a valid claim and thus Cardiff's Schedule 14D-1 may be deficient in failing to disclose the potential applicability of these rules. We note here that when the loan in fact takes effect, there may be a violation of the margin rules themselves. The district court on remand must address the merits of this claim and whether Conwed has standing to assert the claim.

Next Conwed argues that Cardiff's purchase of Conwed stock may make Cardiff an unregistered investment company in violation of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 through 64 and 80b-1 through 21 (1982), because more than 40% of its assets will be held in investment securities. Cardiff contends that it is not now an investment company and is not likely to become one through the purchase of Conwed shares. Cardiff further contends that even if it became an investment company through the purchase of Conwed shares, it would be entitled to an exemption from the Act. We express no view on the merits of this claim and leave the resolution of this issue to the district court; however, we affirm the district court's finding that an injunction cannot be issued on this ground.

### III. CONCLUSION.

Our brief review of the record on this expedited appeal reveals that Cardiff may be in violation of the Williams Act, the margin rules and the Investment Company Act of 1940. However, our review, in the limited time available, and without the benefit of factual findings by the district court, does not convince us that the district court clearly abused its discretion or that there was a clear error of law in its refusal to issue an injunction pending a resolution of the issues on the merits. Accordingly, we dissolve the temporary injunction entered by a single judge pending this appeal and remand to the district court. It shall promptly prepare detailed findings of fact and conclusions of law with respect to each

of the alleged violations. The court may hold an evidentiary hearing if it believes this is necessary and may issue an injunction or any other appropriate order if it finds a violation of the Williams Act, the margin rules or the Investment Company Act. Either party may file an appeal from the district court's opinion. The Clerk of this Court shall arrange for an expedited appeal.