**Jay H. KOPPEL, Plaintiff,**

v.

**Lawrence A. WIEN, Alvin S. Lane, and Wien, Lane & Malkin, Defendants.**

**Mary GREENBAUM, Plaintiff,**

v.

**Lawrence A. WIEN, Alvin S. Lane, and Wien, Lane & Malkin, Defendants.**

**Nos. 81 Civ. 7232(KTD), 81 Civ. 7498(KTD).**

United States District Court, S.D. New York.

Nov. 16, 1983.

Kass, Goodkind, Wechsler & Labaton, for plaintiff Koppel, and Alan E. Bandler, New York City, for plaintiff Greenbaum; Joseph Sternberg, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants; Robert L. Laufer, Jamie B.W. Stecher, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants Lawrence A. Wien, Alvin S. Lane, and Wien, Lane & Malkin ("WL & M") move to dismiss plaintiff's Consolidated Second Amended and Supplemental Class Action Complaint on the alternative grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. This complaint alleges, *inter alia*, violations of sections 14(a) and 10(b) of the 1934 Securities Exchange Act. Defendants also seek attor-

neys' fees and costs. For the reasons that follow the motion to dismiss is granted.

## I.

## BACKGROUND

Plaintiffs seek to sue on behalf of the joint venturers (the "Participants") of a partnership entity known as St. Moritz Hotel Associates ("SMHA"). SMHA holds title to the St. Moritz Hotel (the "Hotel") and to a ground lease of the land underneath the building. SMHA was conceived and organized in 1961 by defendant Wien and Harold L. Strudler. Each had an undivided one-half interest in SMHA. In December 1961, they sold participations in SMHA in accordance with the terms of two participation agreements which defined separate but identical joint ventures. Defendants Wien and Lane, who replaced Strudler, are the general partners of SMHA and the agents for the participants. Defendant WL & M and its predecessor firms have been general counsel to SMHA since its creation.

Essentially all operational duties since SMHA's inception have been performed by the defendants as the agents of SMHA. These activities have included legal and administrative services such as acting as general counsel to SMHA, "maintaining all of its partnership records, performing physical inspections of the property, and reviewing insurance coverage." Letter of Lawrence Wien dated November 6, 1981, Defendants' Notice of Motion, Exh. B at 3 ("November 6, 1981 letter"). Defendants also have conducted substantial services on SMHA's behalf including "monthly receipt of rent from the sublessee, payment of monthly ground rent and mortgage installments, payment of monthly and annual distributions to the Participants, confirmation of the payment of real estate taxes, and active supervision and review of Associ-

ates' independent public accountants with respect to all financial statements and tax information and distribution thereof to the Participants." *Id.* at 3–4. Defendants also prepared all quarterly, annual, and other periodic filings with the state and the SEC. The incidental costs incurred during the provision of these services were paid by the defendants.

The participation agreements provided that the participants would share profits and losses in proportion to their relative fractional interests. The agreements reserved to the participants the power to sell, mortgage or transfer the property, building, and furnishings, and to renew or modify the various leases involved. Even these powers, however, could be overridden under section 7 of the agreements which provided:

> 7. If the consents of Participants owning at least eighty per cent (80%) of The Property have been obtained ... the Agent ... shall have the right to purchase the interest in The Property of any Participant who has not given such consent.... The price shall be the lesser of (i) the amount of the capital contribution of such Participant, ... or (ii) the appraised value of the interest in The Property.

By letter dated November 6, 1981, Wien and Lane notified the participants that they were exploring the possibility of selling the Hotel. In the letter, the defendants sought the participant's consent to a modification of the original agreements which would allow the defendants to share in the sales proceeds above $14,400,000.00.[1] Defendants indicated that the reasons for the modification were threefold: (1) the defendants would no longer provide legal, administrative, or financial services upon sale of the property; (2) a "great deal of work with brokers and prospective purchasers" would

---

1. The letter stated in relevant part:

    In the event of a sale of the premises, the first $7,200,000 net proceeds of such sale (three times the original $2,400,000 investment) shall be paid to the Participants. Two-thirds of any remaining proceeds shall be

paid to the Participants, and one-third shall be paid to Wien, Lane & Malkin.

Because there were two agreements, SMHA would have had to realize $14.4 million in net proceeds before WL & M would receive any benefit.

have to be done to effect a sale; (3) the agreements did not provide for defendants' sharing in any profits upon a sale of the property, and defendants as the original conceivers and creators of the investment deserved a share as some type of deferred compensation. The letter also reminded the participants that upon the consent of over 80 percent of the participants, the agents could buy out the nonconsenting participants at a book value that was much lower than the fair market value.

On November 19, 1981, plaintiff Koppel commenced suit challenging the proposed modification. Plaintiff Greenbaum's suit was filed shortly thereafter. On November 25, 1981, defendants sent a second letter to the participants stating that over 60 percent of the participants had consented to the proposed modification, and requesting the response of the other participants. No mention was made in the November 25th letter of either lawsuit. In a letter to the Participants dated January 20, 1982, Wien noted that over 86 percent of the participants had consented to the modification, but that two participants had instituted the instant lawsuits. Wien stated that he was withdrawing the proposed modification ostensibly because he did not want to force anyone to pay additional compensation to himself or WL & M. He indicated, however, that he might seek voluntary consents to the profit sharing and that he was still pursuing the possibility of a sale.

On May 24, 1982, Wien again wrote to the participants this time seeking their conditional consent to a sale of the property. Although there were no definite negotiations or commitments, Wien stated that it was important that he be able to conclude a sale swiftly if an acceptable offer were received. He defined an "acceptable offer" as one in excess of $25 million.

By August 1982, over 94 percent of the participants had given Wien their consent to the potential future sale of the Hotel. On August 20, 1982, Wien sent a letter to the participants asking each Participant to voluntarily agree to give defendants a share of the profits from any future sale of the Hotel. The formula was that set out in the November 6, 1981 letter: one-third of all proceeds in excess of $14.4 million.

The original and first amended complaints in this case alleged that the November 6th and 25th letters violated the 1934 Act. I eventually dismissed the amended complaint as moot in a decision dated October 28, 1982, because the November 6th proposal was withdrawn. I also denied plaintiffs' motion for attorneys' fees. Plaintiffs were granted, however, leave to file a second amended complaint. It is this complaint, asserting violations of sections 10(b) and 14(a) of the 1934 Act based on Wien's five letters, that defendants now move to dismiss.

## II.

## DISCUSSION

Defendants move to dismiss the complaint on two grounds: (1) lack of subject matter jurisdiction, and (2) failure to state a claim upon which relief can be granted.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants argue that the participations are not "securities" within the meaning of the 1934 Securities Exchange Act. Thus, this court would be without subject matter jurisdiction over the complaint. The test for determining whether the participations are investment contract securities focuses on the extent to which the participant relies on the efforts of the third party, here, agents Wien and Lane. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). As the Court stated in *Howey*, an investment contract is a "scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party ...." *Id.* at 298–99, 66 S.Ct. at 1103. The word "solely" is not to be read literally, *see Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), but in keeping with the notion that the definition of a security "em-

bodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey,* 328 U.S. at 299, 66 S.Ct. at 1103.[2] Moreover, the "test is to be applied in light of 'the substance—the economic realities of the transaction—rather than the names that may have been employed by the parties.'" *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979) (quoting *United Housing Foundation, Inc. v. Foman,* 421 U.S. 837, 851–52, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621, *reh'g denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975)).

■ The economic realities here are that plaintiffs expected their profits would be derived from the defendant agents' expertise and abilities. Defendants' own submissions disclose this conclusion. *See generally* November 6, 1981 letter. Defendants argue that the participation agreements reserve the fundamental decisions to the participants, and that because the operating lease is held by a sublessee and not by SMHA, these fundamental decisions are the only consequential ones relating to the participant's investment to be made. Thus, defendants contend, the participants are like general partners or joint venturers.

Defendants argue legal form over economic substance. As I described in section I *supra,* defendants perform numerous legal, administrative, and financial tasks on behalf of SMHA. In addition, as defendants readily have stated, the participants stand to reap a fivefold gain on the sale of the Hotel. The sale profits would far sur-

pass any annual payments made to the participants. The sale, however, is to be consummated solely through the efforts of the defendants, which includes the seeking and locating of a buyer, the negotiation of a sale, the procurement of the assent of the various leasors and lessees, the closing of the sale, and the distribution of the proceeds. Hence, this certainly is a situation in which the investors expect their profits to be gained through the efforts of a third party—here, the defendants.[3] As such, the participations are investment contracts as defined by the 1934 Act.[4]

### B. Motion to Dismiss for Failure to State a Claim

#### (1) Count One

■ Count One alleges that Wien's letters of November 6th and 25th, 1981 were proxy solicitations that violated section 14(a) of the 1934 Act because, *inter alia,* they were knowingly and materially false and misleading. This Count is dismissed for two reasons. First, this claim is identical to the one that I previously dismissed in October 1982. Plaintiffs are not entitled to reassert such a claim. *See Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Second, plaintiffs have not explained how they were or are in any way injured by the withdrawn solicitations. As such, plaintiffs lack standing, *see Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 325 n. 2, 99 S.Ct. 645, 648 n. 2, 58 L.Ed.2d 552 (1979),

---

**2.** Furthermore, the Supreme Court's most recent enunciation or restatement of the *Howey* test omitted use of the word "solely." *See United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 ("The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."), *reh'g denied,* 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975).

**3.** It is also relevant that defendants registered the participations as securities under the 1934 Act.

**4.** I also note that the "fundamental" powers that plaintiffs supposedly retained also could be rendered meaningless if over 80 percent of the other participants agreed. In the face of a buy out at a book value far below the market value, the potential inhibitory effect on the exercise of these "fundamental" powers should not be ignored.

and their attempt to revive this moot cause of action is rejected.

### (2) Count Two

Count Two alleges that Wien's May 24, 1982 letter requesting consent to a conditional sale of the Hotel was a materially false and misleading proxy solicitation. The allegations in support of Count Two are contained in paragraphs 31, 32(a) through (p), and 43(b). In order to evaluate the allegations, I shall address the legal sufficiency of each particular paragraph.

An omission is material when "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ...." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).[5] The issue of materiality is a mixed question of law and fact. *Id.* at 450, 96 S.Ct. at 2132. As such, summary judgment is only appropriate when the "established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality' ...." *Id.,* (quoting, *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1129 (4th Cir.1970), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974)). Certainly no lesser standard applies to a motion to dismiss.

Certain types of omissions, however, wholly apart from their materiality are irrelevant in the context of proxy solicitations. For example, paragraphs 32(e), (i), and (p) allege that the defendants failed to disclose their motives behind certain aspects of the solicitation's proposal. Paragraph 32(e) alleges that defendants omitted the reasons for awarding Helmsley-Spear, Inc., the exclusive brokerage rights to negotiate a sale of the Hotel. Paragraph 32(i) asserts that defendants did not disclose that the payment by Helmsley of five percent of the net sale's proceeds to Wien in the event of a sale was a *quid pro quo* for granting Helmsley the exclusive bro-

kerage contract at a rate higher than his customary and published rate, and for distributing fifty percent of the sales price to Helmsley's company as operating lessee. Paragraph 32(p) claims that Wien's reference to a future solicitation of a voluntary sharing of profits failed to disclose his intention to usurp part of SMHA's assets in the future. The failure to disclose these motives, plaintiffs claim, violates section 14(a). I disagree.

The proxy rules require disclosure of the provisions, not the putative reasons behind proposing them. *See Lewis v. Oppenheimer & Co.,* 481 F.Supp. 1199, 1204 (S.D.N.Y. 1979) ("the actual subjective motives behind a controlling shareholder's recommendation of a transaction need not be disclosed, as long as the relevant underlying facts are disclosed."); *see also Panter v. Marshall Field & Co.,* 646 F.2d 271, 290 (7th Cir.) ("there is no federal securities law duty to disclose one's motives"), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). Thus, these paragraphs do not state allegations within the reach of section 14. Other paragraphs have similar failings.

Paragraphs 32(a), (h), (j), and (n) allege that defendants should have disclosed that particular aspects of the proposal violated state or federal law or were in contravention of the agreements. In particular, paragraph 32(a) alleges that defendants failed to disclose that the proposed consents also would be, in effect, consents to conflicts of interest, breaches of fiduciary duties and other improper conduct which the agreements do not permit. Paragraph 32(h) asserts that Wien's fiduciary obligations to the participants would prohibit him from accepting the five percent payment from Helmsley. Paragraph 32(j) states that Wien omitted that his fiduciary obligation was to enhance SMHA's financial position, not the operating lessees. Last, paragraph 32(n) charged that Wien

---

**5.** A material misrepresentation is "of such a character that it might have been considered important by a reasonable shareholder who was

in the process of deciding how to vote." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970).

968

mentioned that he would be seeking in the future the voluntary sharing of sale's proceeds, but omitted that Wien was not entitled to such proceeds. These legal conclusions or characterizations are not omissions within the contemplation of section 14(a). *See Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.,* 476 F.2d 687, 697 (2d Cir.1973) ("the disclosure requirements of the securities laws require 'nothing more than the disclosure of basic facts so that outsiders may draw upon their own evaluative experience in reaching their own investment decisions'") (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (en banc), *cert. denied sub nom., Kline v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)).

In the same vein, defendants generally were not required to label or characterize various aspects of the proposal. For instance, paragraph 32(m) alleges that defendants should have stated that the Landauer appraisal was irrelevant. This is not required by the securities laws. *Id.; see also Nemo v. Allen,* 466 F.Supp. 192, 195 (S.D.N.Y.1979) ("All that need be disclosed are the facts from which a stockholder may draw its own conclusion.").

■ Plaintiffs argue at length that the supposed conflicts of interest—of which assertedly there were several—rendered the solicitation false and misleading.[6] *See* paragraphs 31 and 43(b). Section 14(a) as I previously emphasized mandates no more than accurate disclosure. *See Gulf & Western Industries, supra.* Defendants

complied with this statutory obligation by disclosing the conflicts.[7] In addition, the Second Circuit, citing *Green v. Santa Fe Industries, Inc.,* 430 U.S. 954, 97 S.Ct. 1597, 51 L.Ed.2d 803 (1977), has stated "that violation of any such state-law fiduciary duties, including non-disclosure of conflicts of interest ... will not support a claim of constructive fraud under § 14(a) ...." *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1084 (2d Cir.1977). This part of defendants' solicitation, thus, adequately conformed to federal securities' law requirements.

■ Plaintiffs also claim that defendants did not disclose that a more financially advantageous brokerage deal could be obtained. For example, paragraphs 32(d) and (g) allege that defendants did not disclose whether other brokers would undertake the sale of SMHA's property at a more competitive rate. Paragraph 32(f) claims that the solicitation omitted whether other brokers would handle the sale on a non-exclusive basis. Paragraph 32(c) alleges that defendants should have disclosed that the brokerage rate Helmsley-Spear was charging SMHA was higher than its published rates. These allegations may assert a state law breach of fiduciary duty claim, but they do not allege a proxy rule violation. *See, e.g., Umbriac v. Kaiser,* 467 F.Supp. 548, 553 (D.Nev.1979) ("management is not required to discuss the panoply of possible alternatives to the course of action it is proposing ...."). The partic-

---

6. Defendants summarized, and plaintiffs apparently agree, that the conflicts of interest are as follows:
—the operating lessee is controlled by Harry Helmsley;
—Helmsley also controls Helmsley-Spear, which would act as exclusive broker in the transaction;
—WL & M might represent not only SMHA, but the operating lessee as well, in which case WL & M would receive a legal fee for representing both entities;
—if a sale is consummated, the operating lessee will, in addition to paying WL & M's legal fee, pay Wien 5% of its net proceeds;
—defendants own, beneficially and legally, $60,000 in participations in SMHA;

—Wien would shortly solicit individual Participants' voluntary consent to additional compensation for WL & M; and, finally,
—based upon the foregoing "[WL & M], as well as Mr. Lane and I, could be deemed to have a conflict of interest."
Defendants' Memorandum of Law in Support of Motion to Dismiss at 26–27.

7. Plaintiffs argue that the conflicts of interest were not stated or summarized as explicitly as they should have been. This contention is meritless; each of the claimed conflicts of interest are expressly stated at some point in the May 24th letter. Defendants did not obfuscate or highlight them.

ipants were entitled under section 14 to disclosure of the facts of *this* transaction. They could decide thereafter whether it was sufficiently advantageous. *See also TSC Industries*, 426 U.S. at 458, 96 S.Ct. at 2136.

Plaintiffs allege in paragraph 32(b) that defendants should have disclosed that they had close business and professional connections to Harry Helmsley. This alleged omission is irrelevant, immaterial, and in any case the facts of their relationship were adequately disclosed. Plaintiffs also allege that defendants should have disclosed that to consent to the sale as proposed was to consent to the conflicts of interest, *see* paragraph 32(k), and that Wien's reference to seeking in the future additional *voluntary* compensation from the participants should have disclosed that he wasn't entitled to additional compensation. I note only that the words "consent" and "voluntary" are unambiguous and that the agents, like "corporations, are not required to address their stockholders as if they were children in kindergarten." *Richland v. Crandall*, 262 F.Supp. 538, 554 (S.D.N.Y.1967).

Plaintiffs allege in paragraph 32(g) that the May 24 letter "failed to adequately disclose the nature and existence of the Koppel and Greenbaum actions." I find this allegation insufficient to survive this motion to dismiss. Defendants' letter did disclose the facts and nature surrounding the actions. Plaintiffs, on the other hand, have not alleged how defendants' description was in any way false or misleading, nor did they respond to defendants' argument that defendants were not even required to mention the two actions. *See Amalgamated Clothing and Textile Workers Union v. J.P. Stevens*, 475 F.Supp. 328, 332 (S.D.N.Y.1979).[8]

The last two paragraphs relevant to Count Two are paragraphs 32($l$) and (o). Paragraph ($l$) alleges that the appraisal of SMHA prepared by Landauer Associates, Inc., omitted the fair market value of SMHA's interest. The appraisal was based solely on the present value of the amounts to be received by SMHA under the operating lease. If this were all the information provided to the participants on the value of SMHA's interest, plaintiffs might have sufficiently alleged a violation of section 14(a). The May 24 letter, however, did not include only the bare numerical appraisal value of $13.3 million. It also attached the material facts upon which Landauer based its opinion. As I have emphasized before, section 14(a) requires disclosure of material facts, evaluation generally is left to the investor. *See Gulf & Western Industries*, 476 F.2d at 697; *see also Radol v. Thomas*, 534 F.Supp. 1302, 1304, 1316 (S.D.Ohio 1982) ("The rule ... merely requires that an opinion be given and that the material factors on which it is based be disclosed.... shareholders will presumably decide for themselves what weight to accord the opinion.") Thus, the law does not require as plaintiffs urge, an analysis of the purposes and limitations of the appraisal when its contours are apparent both from the disclosed basis for Landauer's valuation, and from the context in which the appraisal is presented. The latter point is illustrated here by the fact that though the appraisal value was set at $13.3 million, the fair market value was obviously at least $25 million: Wien sought consent of a sale only if it were for more than $25 million. Therefore, to suggest that the participants were not apprised that a fair market value valuation would result in a higher appraisal value than the Landauer method is contra-

---

**8.** Plaintiffs, in fact, do not address any of the specific arguments defendants assert against Counts Two through Five. Instead, they anomalously posit—for several pages in their brief—that the whole action is not moot. Defendants' arguments aimed at Counts Two through Five are not that the action is moot. As such, plaintiffs could be said to have waived all other legal theories in defense of their claims. *Cf. Wolf v. Frank*, 477 F.2d 467, 474–75 (5th Cir.) ("we conclude that because defendants did not in fact seek such relief below they cannot now raise a new theory that was not presented to the district court"), *cert. denied*, 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973).

dicted by the plain language of the solicitation.

▮▮▮ Finally, paragraph 32(a) challenges the inclusion in the Landauer appraisal of the "capitalized market value of the base and additional supervisory fees which would accrue to Wien, Lane & Malkin" as agent. Plaintiffs argue that defendants were not "entitled" to these supervisory fees, but would earn them only if they continued as agents. This certainly is true. On the other hand, whoever provided these services during subsequent years would seem to be entitled to some payment. Alternatively, if the property were sold and the ventures dissolved, it is beyond peradventure that WL & M would no longer be entitled to supervisory fees from a nonexisting entity. A reasonable investor need not be reminded of obvious facts. *See Richland v. Crandall*, 262 F.Supp. at 554. The failure to state their nonentitlement explicitly, thus, is certainly immaterial.

In summary, therefore, defendants' May 24, 1982 letter on its face adequately disclosed the material facts concerning the proposed sale. The legal insufficiency of the claim, apparent despite the complaint's mischaracterizations and plaintiffs' failure to respond to the particular arguments addressed to dismissing Count Two, warrant its dismissal.

### (3) Count Three

▮▮ Count Three asserts that Wien's August 20, 1982 letter requesting voluntary contributions was a false and misleading proxy solicitation. This Count is dismissed for several reasons. First, the letter asked for a voluntary sharing of any future sale of the Hotel for more than $14.4 million. Plaintiffs undeniably did not agree to the request. As such, they have not alleged that they were or could possibly have been injured in any fashion. Without possible injury, plaintiffs have no standing to assert the claim. *See Parklane Ho-*

*siery*, 439 U.S. at 325 n. 2, 99 S.Ct. at 648 n. 2.

Furthermore, plaintiffs have presented no arguments in opposition to defendants' motion to dismiss Counts Three and Four. *See supra* note 8. Such a failure amounts to a waiver of any other grounds for denying defendants' motion to dismiss this Count. *See Wolf v. Frank*, 477 F.2d at 474–75. In addition, there are additional reasons for dismissing this Count. For example, participants were not asked to authorize any partnership action; accordingly, the August 20th letter would not seem to be a proxy solicitation. *See J.I. Case v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381–82 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Finally, I have difficulty discerning, and plaintiffs have insufficiently alleged, any materially false or misleading statements in the letter.[9]

### (4) Count Four

Count Four alleges that the defendants proposed to compel the sale of dissident investor's participations in violation of section 10(b) and Rule 10b–5. This Count is dismissed.

▮▮▮ First, I note that plaintiffs proffered no arguments in opposition to defendants' motion to dismiss this Count. Second, I find that plaintiffs fail to meet the purchaser or seller requirement of section 10. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The purchase or sale requirement can be met when a security holder is "forced" after a merger or similar corporate transaction to convert his or her security to cash at a fixed price. *See Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). This doctrine, and the statutory language

---

**9.** Plaintiffs also argue that the May 24, 1982 letter relies on the false and misleading November 6th and 25th, 1981 letters. This argument is meritless. The May 24th letter no more than mentions the earlier letters. Plaintiffs' distortion must be rejected.

on its face, apply only when such a conversion has occurred. *See Greenstein v. Paul*, 400 F.2d 580, 581–82 (2d Cir.1968) ("when this merger is carried out, if it even is, the *Vine* case will be in point. Until [then] the plaintiff is not a seller and cannot invoke [section 10]"); *see also Alpex Computer Corp. v. Pitney-Bowes, Inc.*, 417 F.Supp. 328, 331 (S.D.N.Y.1976). Here, plaintiff has not alleged that the property has been sold for cash, nor even that defendants have entered into substantial negotiations. Therefore, plaintiffs are not purchasers or sellers as required by section 10, and cannot maintain a Rule 10b–5 action.[10]

### (5) Count Five

The only remaining claim is a pendent state law claim for breach of fiduciary duties. Because all of the federal claims have been dismissed and no proceedings have been held concerning this claim, it is dismissed. *See A.H. Emery Co. v. Marcan Products Corp.*, 389 F.2d 11, 19–21 (2d Cir.), *cert. denied*, 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968).

### C. Attorneys' Fees

Defendants' notice of motion mentions a request for attorneys' fees. No legal basis is suggested for such an award. Given that plaintiffs were granted leave to file this second amended and supplemental class action complaint by my endorsement dated October 28, 1982, I fail to see any basis for awarding attorneys' fees. Accordingly, this aspect of defendants' motion is denied.

### III.

### CONCLUSION

In summary, defendants' motion to dismiss the complaint for failure to state a

claim is granted, and defendants' motion for an award of attorneys' fees is denied.

SO ORDERED.

---

10. To the extent that the complaint requests some form of injunctive relief, it fails to provide any grounds for such equitable relief. An injunction may issue only upon a showing of irreparable injury. *See Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 at 45 (2d Cir.1983). Plaintiffs do not demonstrate that damages could not make them whole.