**Doe DIAMOND, Plaintiff,**

v.

**Mark L. AREND, George Barrie, Richard Barrie, Leonard deKarr, Robert Fayfield, Stanley Frederick, Cary Grant, Matthew J. Levitt, Robert Okin, Jack Rachleef, Alexander Yuelys, Norman J. Waterman, Gibbons Green Van Amerongen, Inc., Faberge, Inc. and McGregor Corporation, Defendants.**

No. 84 Civ. 0751 (SWK).

United States District Court,
S.D. New York.

Nov. 17, 1986.

Bizar, D'Alessandro & Shustak, New York City, for plaintiff.

Rubin Baum Levin Constant & Friedman, New York City by Martin J. Schwartz, for defendants, Faberge, Inc. and McGregor Corporation.

Pollner, Mezan, Stolzberg & Frechtma, P.C., New York City, for defendants, de-Karr, Fayfield, Frederick, Grant, Levitt, Okin, Rachleef and Waterman.

Lankler & Siffert, New York City, for defendants, George Barrie and Richard Barrie.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant, Gibbons Green Van Amerongen, Inc.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff, a former shareholder of Faberge, Inc. ("Faberge"), alleges a variety of claims against the disparate defendants: Faberge; the officers and directors of Faberge; Gibbons Green Van Amerongen, Inc. ("Gibbons Green"), an investment banking firm which unsuccessfully attempted a leverage buyout of Faberge in January, 1984; and McGregor Corporation ("McGregor"), which acquired Faberge in August, 1984. Plaintiff alleges primarily state law causes of action against Faberge and its officers and directors, sounding in corporate waste and breach of fiduciary duty. The single federal claim advanced by plaintiff is violation of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n (e) (commonly referred to, together with Sections 13(d) and (e) and 14(d) and (f), as the Williams Act).[1] Plaintiff asserts that federal jurisdiction is appropriate over this claim pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and over her state law claims pursuant to the principles of pendant jurisdiction.

Defendants disagree. Before this Court is a motion by Faberge and McGregor for judgment on the pleadings or, alternatively, for summary judgment, asking the Court to dismiss plaintiff's Section 14(e) allegations for failure to state a claim, and to dismiss plaintiff's state law claims for lack of subject matter jurisdiction. This motion has been joined in by defendants former officers and directors of Faberge.[2] Both plaintiff and defendants have submitted numerous affidavits and exhibits which the Court considered along with the pleadings.

The Court will treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court's role is not to try issues of fact; it is to "determine whether there are issues to be tried". *Schering Corp. v. Home Insur. Co.,* 712 F.2d 4, 9 (2d Cir.1983), *quoting Heyman v. Commerce & Indus. Insur. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975). *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

While the burden is on the moving party to show that no issues of fact exist, *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the bur-

---

**1.** Section 14(e) of the Williams Act, in pertinent part, provides:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading ... in connection with any tender offer ... or any solicitation of security holders in opposition to or in favor of any such offer....

15 U.S.C. § 78n(e).

**2.** The Court, in an order dated October 22, 1986, granted defendant director Alexander Yuelys' motion for summary judgment. The Court found that defendant Yuelys was no longer a director of Faberge at the time of the alleged securities law violations, and thus neither federal question jurisdiction nor the principles of pendant party jurisdiction supported the assertion by this Court of subject matter jurisdiction over defendant Yuelys.

den of proof at trial". *Celotex Corp. v. Catrett, supra,* 106 S.Ct. at 2553. Speculation, conclusory allegations and mere denials by the nonmoving party are not enough to raise genuine issues of fact. *See Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 187–88 (2d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1978); *Clayton v. City of New York,* 596 F.Supp. 355, 360 (S.D.N.Y.1984).

For the reasons stated below, the Court finds that there is no dispute of material fact, and therefore defendants are entitled to summary judgment as a matter of law.

## BACKGROUND

As a basis for plaintiff's corporate waste and mismanagement claims, plaintiff alleges that the defendants officers and directors of Faberge had used their positions to unlawfully profit at the expense of the shareholders. In particular, plaintiff alleges that in 1981, defendants officers and directors amended their employment contracts with Faberge so as to substantially increase their earnings without any commensurate benefit accruing to Faberge.

The following events, alleged in plaintiff's complaint and significant to the present action, are undisputed by the parties:

On June 2, 1983, a purported derivative suit was filed in New York State Court against Faberge and certain officers and directors, attacking the employment compensation agreements as a breach of fiduciary duty. *Estate of Joseph Harris v. Mark L. Arend, et al.,* Index No. 24309/83 (N.Y.S.Ct., N.Y.Co.) (the *"Harris"* litigation"). That litigation was still pending at the time the present motions were filed.

On January 6, 1984, Faberge entered into a letter of intent with Gibbons Green whereby Faberge would be acquired by Gibbons Green in a leverage buyout for $30 per share. In this letter of intent, Faberge agreed to (a) grant Gibbons Green an option to purchase 500,000 shares of Faberge stock at $30 per share; (b) pay Gibbons Green $4,000,000 if Faberge received a tender offer for its stock; and (c) pay

$2,000,000 to Gibbons Green in the event the Faberge board of directors recommended that the Faberge shareholders accept an acquisition offer other than Gibbons Green's.

McGregor, then a shareholder of Faberge, brought a derivative action in New York Supreme Court on January 9, 1984, against Faberge, its officers and directors, and Gibbons Green, seeking to enjoin the payment of any money or the issuance of any stock by Faberge to Gibbons Green pursuant to the letter of intent signed by those parties. *McGregor Corporation v. Faberge, Inc., et al.,* Index No. 00570/84 (N.Y.S.S.Ct., N.Y.Co.) (the *"McGregor* action"). Two other purported class actions were brought against Faberge and Gibbons Green almost simultaneous to the filing of the *McGregor* action, seeking similar relief.

In addition, plaintiff here, Doe Diamond, sought leave to intervene as a named plaintiff in the *Harris* litigation and to amend the complaint in that action in order to attack the letter of intent between Faberge and Gibbons Green and to add Gibbons Green as a party-defendant. Leave to intervene and to amend was sought on January 23, 1984, and notice that the motion was granted was sent to Faberge on February 13, 1984.

On January 13, 1984, McGregor contracted to purchase from Shamrock Holdings, Inc. ("Shamrock") 777,800 shares of Faberge common stock at $32 per share. McGregor then proposed to acquire Faberge in a two-tier transaction: a cash tender offer for 2,200,000 Faberge shares at $32 per share to be followed by a merger of Faberge into McGregor, and the redemption of the remaining outstanding shares of Faberge stock for McGregor securities approximately valued at $32 per share. Faberge announced on January 16, 1984 that it had received McGregor's proposal and, on January 19, 1984, that its board of directors had voted to recommend acceptance of the proposal to the Faberge shareholders. Immediately thereafter, the two companies entered into a merger agreement

(the "Merger Agreement"). This Merger Agreement and other relevant information were filed by McGregor with the Securities and Exchange Commission ("SEC"), pursuant to SEC regulations, as part of its Schedule 14D–1.

McGregor commenced its tender offer on January 23, 1984 and terminated it on February 17, 1984. Out of the 5,619,301 issued and outstanding shares of Faberge common stock, the owners of only 4.1 percent of those shares failed to tender.

Following the termination of its tender offer, and pursuant to the terms of its offer, McGregor accepted 2,200,000 shares for purchase. Consequently, on March 2, 1984, McGregor owned approximately 61 percent of the outstanding shares of Faberge common stock, and immediately named seven members of its own board to the Faberge board of directors.

On March 15, 1984, McGregor received, at its request, an order of discontinuance in the *McGregor* action from the New York Supreme Court, dismissing, without prejudice, McGregor's action against Faberge, its officers and directors, and Gibbons Green.

On August 23, 1984, a special shareholders' meeting was held to vote on Faberge's proposed merger into McGregor. Of the issued and outstanding shares of Faberge common stock *not* owned by McGregor, 98.95 percent of those shares (approximately 1,082,693 shares) voted in favor of the merger. Only 8,407 shares, representing 0.385 percent of the shares held by persons other than McGregor, voted against the merger.

Plaintiff's allegations of securities law violations center on McGregor's tender offer materials. McGregor, at the commencement of its tender offer, had mailed to all Faberge shareholders a 24–page document, its "Offer to Purchase for Cash Up to 2,200,000 Shares of Common Stock of Faberge, Incorporated at $32 Net Per Share by McGregor Corporation" ("Offer to Purchase"). Included in the same envelope with McGregor's Offer to Purchase was Faberge's "Solicitation Recommenda-

tion Statement on Schedule 14D–9" ("Recommendation Statement"). Plaintiff alleges that this Offer to Purchase, sent by McGregor to the Faberge shareholders, failed to disclose, or misstated, material facts in violation of Section 14(e) of the Williams Act.

## DISCUSSION

### A. WILLIAMS ACT

The Williams Act was enacted by Congress to ensure that full and fair disclosures are made to shareholders in the context of a tender offer. The Court recognizes, however, that the dream of a perfect tender offer is illusory. As the Second Circuit has repeatedly recognized:

> Congress intended to assure basic honesty and fair dealing, not to impose an unrealistic requirement of laboratory conditions that might make the new management a tool for incumbent management to protect [its] own interests against the desires and welfare of the stockholders. These considerations bear on the kind of judgment to be applied in testing conduct—of both sides— and also on the issue of materiality.

*MacFadden Holdings, Inc. v. JB Acquisition Corp., et al.*, 802 F.2d 62, 66–67 (2d Cir.1986), *quoting Electronic Specialty Co. v. International Controls Corp.*, 409 F.2d 937, 948 (2d Cir.1969). This Circuit has only recently reiterated that the courts must "exercise care so as not to impede the informed choice of the shareholders of a target company". *MacFadden Holdings, Inc., supra*, at 67, *quoting Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir.1985).

In order to succeed on its claim under Section 14(e) of the Williams Act, plaintiff must show that (a) McGregor misrepresented or failed to disclose a material fact; (b) plaintiff relied to her detriment on McGregor's misrepresentation or omission; and (c) McGregor made the misrepresentation or omission with intent to deceive. *Caleb & Co. v. E.I. Du Pont de Nemours and Co.*, 599 F.Supp. 1468, 1474 (S.D.N.Y.1984).

*See Chris-Craft Industries v. Piper Aircraft Corp.*, 480 F.2d 341, 362 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973).

The standard for materiality is:

... [A] substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*MacFadden Holdings, Inc. v. JB Acquisition Corp., et al.*, 641 F.Supp. 454, 461–62 (S.D.N.Y.), *rev'd on other grounds*, 802 F.2d 62 (2d Cir.1986), *quoting TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

In this case, plaintiff alleges that McGregor, in its Offer to Purchase, misstated or omitted the following material facts:

a) the existence of the *Harris* litigation;

b) the termination of the *McGregor* action.

c) McGregor's agreement to honor existing Faberge employment agreements and to enter into a termination agreement with defendant George Barrie, then Faberge's chairman of the board;

d) Faberge's purpose in granting McGregor an option to purchase from it shares of Faberge common stock was to induce McGregor to enter into the Merger Agreement;

e) McGregor's purpose in agreeing to indemnify the Faberge directors for any claim arising out of the Gibbons Green agreement was to induce Faberge to enter into the Merger Agreement;

f) the Merger Agreement provided for McGregor and Faberge to defend on the merits any suit instituted by Gibbons Green arising out of the Faberge-Gibbons Green letter of intent;

g) Shamrock's intention to acquire control of Faberge;

h) the tender offer price offered by McGregor had been reduced by Faberge's liabilities caused by the compensation and indemnity agreements.

After careful consideration of the papers submitted by all the parties, the Court finds that each of the above mentioned points were either properly disclosed by McGregor to the Faberge shareholders, or were not material facts required to be disclosed by McGregor.

1. *The Harris litigation.*

Plaintiff alleges that McGregor was required to disclose, and failed to disclose, the existence of a purported derivative action, pending in New York State court, for breach of fiduciary duty and corporate waste, brought against Faberge, its officers and directors, and Gibbons Green (the *Harris* litigation). Plaintiff here, Doe Diamond, intervened as a plaintiff in that action.

■ Plaintiff is mistaken in her allegation of wrongdoing. First, McGregor was not named as a party in the *Harris* litigation, and indeed, was not referred to in the pleadings, or accused of any wrongdoing. Section 14(e) imposes no obligation on the tender offeror to disclose the existence of pending litigation against the target corporation. *See e.g., Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2075–76, 45 L.Ed.2d 12 (1975) (purpose of Williams Act is to ensure that shareholders in a target corporation are adequately informed about the qualifications and intentions of the *tender offeror*). *See Sheinberg v. Fluor Corporation*, 514 F.Supp. 133 (S.D.N.Y.1981).

■ Second, the existence of the *Harris* litigation was not a material fact. The *Harris* litigation was disclosed by Faberge in the proxy statement it sent to its shareholders on July 23, 1984, seeking approval of the proposed Faberge-McGregor merger. Despite this disclosure, 98.95 percent of the shares voted and owned by persons other than McGregor were cast in favor of the merger. Under the circumstances, the

Court finds that disclosure of the *Harris* litigation was not important to a reasonable shareholder "in deciding how to vote". *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *see also Prudent Real Estate Trust v. Johncamp Realty, Inc.*, 599 F.2d 1140, 1146–48 (2d Cir.1979) (standard for materiality of an omitted or misrepresented fact in a tender offer is the same as in a proxy contest). *Cf. MacFadden Holdings, Inc., supra*, 802 F.2d at 67 ("[m]ore than ninety percent of the outstanding shares ... were tendered.... If the district court's decision is left undisturbed, the preference of the overwhelming majority of [the] shareholders would be frustrated").

█  Third, in order to prevail on her securities claim, plaintiff must show that she relied to her detriment on McGregor's representation or omission. *See Klausner v. Ferro*, 604 F.Supp. 1188, 1193 (S.D.N.Y. 1985), *aff'd*, 788 F.2d 3 (1986); *Caleb & Co., supra*, 599 F.Supp. at 1474. Since plaintiff admittedly knew of the *Harris* litigation, and actually moved to intervene in that litigation on January 23, 1984—the day McGregor commenced its tender offer—plaintiff cannot now contend that she relied to her detriment on the omission from McGregor's Offer to Purchase of information detailing the existence of the *Harris* litigation.

### 2. The McGregor Action.

█  Plaintiff alleges that McGregor violated Section 14(e) by failing to disclose that, "as a result" of the Merger Agreement with Faberge, it intended to terminate its state court derivative action against Faberge, its officers and directors, and Gibbons Green, "without notice to Faberge shareholders". Even if McGregor's termination of its action is a material fact within the context of the tender offer, McGregor was not required to disclose in its tender offer material facts of which it was unaware at the time. Plaintiff offers no evidence that McGregor, during the pendency of its tender offer, planned the discontinuance of its state court derivative action following the termination of the tender offer. Similarly, while plaintiff implies that McGregor actually entered into an agreement with Faberge in which McGregor promised to terminate its action against Faberge, plaintiff alleges no facts in support of her position. The Court finds, as a matter of fact, that there is no indication, in the Merger Agreement or any other document before this Court, that McGregor agreed to terminate the derivative action as an inducement for the merger.

Furthermore, even if McGregor intended, at the time of the tender offer, to discontinue the derivative action, the omission from its Offer to Purchase of an express statement to that effect did not "significantly alter the 'total mix' of information" available to the shareholders. *MacFadden, supra*, 641 F.Supp. at 461–62. McGregor, in its Offer to Purchase, clearly disclosed that McGregor had brought an action against Faberge, its officers and directors, and Gibbons Green, in order to prevent the payment of any money or the issuance of any stock to Gibbons Green pursuant to the letter of intent signed by Gibbons Green and Faberge. McGregor also disclosed in its Offer to Purchase that, under the Merger Agreement, Faberge had agreed not to make any payments or transfers of stock to Gibbons Green absent a final court order, and further, that McGregor had promised to indemnify Faberge's officers and directors against any liability arising out of the letter of intent. Under the circumstances, it would be naive to expect that McGregor *would* continue its lawsuit. The relief sought in the state court action—to prevent the payment of any money or the sale of any securities to Gibbons Green— was already realized by McGregor under the Merger Agreement. Moreover, it is unlikely that McGregor would continue to prosecute a lawsuit where it had agreed to indemnify one set of defendants (the Faberge officers and directors), and expected to merge with another defendant (Faberge). The Court finds, therefore, that

McGregor's disclosures on this topic were adequate.[3]

### 3. *The Faberge Employment Agreements.*

McGregor allegedly violated Section 14(e) by failing to disclose that "the merger agreement with Faberge included a $3.2 million severance agreement for defendant George Barrie and an acceptance of the existing improper compensation agreements of the other Faberge executives". Plaintiff avers that McGregor's Offer to Purchase omitted any reference to these agreements; that, while the Faberge Recommendation Statement referred to the employment agreements, it did so only perfunctorily; and although details of the agreements were on file with the SEC, and described in Faberge's 1983 proxy statement, such disclosure does not constitute adequate compliance with the requirements of Section 14(e).

■ The Court, after reviewing the applicable facts and the totality of the circumstances, disagrees. The $3.2 million severance agreement and the compensation agreements for certain Faberge employees were disclosed, in detail, on pages 2 and 3 of the Faberge Recommendation Statement. This Recommendation Statement was mailed to all Faberge shareholders *in the same envelope* as McGregor's Offer to Purchase. Furthermore, the Faberge shareholders were directed to both McGregor's SEC filings and Faberge's March 25, 1983 proxy statement if they desired even more detailed information. McGregor was entitled to assume that the Faberge shareholders were aware of the compensation agreements enacted by Faberge for its employees and disclosed by Faberge in its previous proxy statement. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir.1978); *Spielman v. General Host Corp.*, 538 F.2d 39, 40–41 (2d Cir.1976); *Gulf & Western Industries, Inc. v. Great*

*Atlantic & Pacific Co., Inc.*, 356 F.Supp. 1066, 1071 (S.D.N.Y.), *aff'd*, 476 F.2d 687 (2d Cir.1973). Thus, considering the information available to the shareholders, the Court finds that McGregor adequately disclosed all material facts on this issue.

■ The Court has also considered plaintiff's argument that McGregor failed to characterize the compensation agreements as "improper" or "excessive", and finds it to be without merit. *See Klamberg v. Roth*, 473 F.Supp. 544, 551 (S.D.N.Y.1979) ("it is not deceptive to fail to 'characterize' those [disclosed] facts with 'perjorative nouns and adjectives' or to fail to verbalize all adverse inferences expressly"); *Nemo v. Allen*, 466 F.Supp. 192, 195 (S.D.N.Y. 1979); *Rodman v. Grant Foundation*, 460 F.Supp. 1028, 1037–41 (S.D.N.Y.1978), *aff'd*, 608 F.2d 64 (2d Cir.1979).

### 4. *Motivation.*

■ It is undisputed that, in its Offer to Purchase, McGregor disclosed (a) that it had agreed to indemnify the Faberge officers and directors for any liability caused by the Faberge-Gibbons Green transaction; and (b) its stock option agreement with Faberge, whereby McGregor would be entitled to purchase 600,000 authorized but unissued shares of Faberge stock in the event of the commencement of a competing tender offer. Plaintiff alleges, however, that McGregor violated the Williams Act by failing to disclose that Faberge's purpose in granting the stock option was to induce McGregor to enter into the Merger Agreement, and that McGregor agreed to indemnify the Faberge officers and directors in order to induce Faberge to enter into the Merger Agreement.

The Court is "not inclined to subject every tender offer to a nit-picking judicial scrutiny which will in the long run injure shareholders by preventing them from taking advantage of favorable offers". *MacFadden Holdings, Inc., supra*, 802

---

**3.** The Court notes that the *McGregor* action was discontinued by order of the New York Supreme Court on March 15, 1984, after that court was informed of the circumstances of McGre-

gor's tender offer for Faberge. The Court finds that the *McGregor* action was terminated in compliance with New York law, Section 626 of the Business Corporation Law.

F.2d at 71, *quoting Data Probe Acquisition Corp. v. Datatab, Inc.,* 722 F.2d 1, 5 (2d Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). McGregor, in the context of announcing to Faberge shareholders the Merger Agreement and the commencement of its tender offer, disclosed the agreements in question. Any reasonable shareholder would realize that McGregor and Faberge acceded to those agreements in order to motivate the other party to enter into the Merger Agreement. The Court will not require McGregor to restate the obvious. *Raybestos-Manhattan, Inc. v. Hi-Shear Industries, Inc.,* 503 F.Supp. 1122, 1131 (E.D.N.Y.1980) ("recitation of the obvious" is not required); *Richland v. Crandall,* 262 F.Supp. 538, 554 (S.D.N.Y.1967) (Mansfield, J.) ("corporations are not required to address ... stockholders as if they were children in kindergarten").

### 5. *Defense of an Action Brought by Gibbons Green.*

■ Plaintiff avers that McGregor obligated itself to defend on the merits any action brought against Faberge by Gibbons Green. Plaintiff, however, offers no proof in support of this allegation.

Plaintiff asks this Court to infer such an obligation on the part of McGregor from the provisions of the Merger Agreement whereby McGregor promised to indemnify the Faberge officers and directors in the event of an action by Gibbons Green arising out of the Faberge-Gibbons Green letter of intent, and Faberge agreed not to abide by the terms of the letter of intent absent a final court order.

Those two provisions, contained in the Merger Agreement, were comprehensively disclosed in McGregor's Offer to Purchase. Plaintiff does not dispute this fact. The Court will not infer from those provisions an agreement by McGregor to defend any action brought by Gibbons Green and will not subject McGregor to a duty to disclose such an agreement, where its existence is only suggested. Furthermore, if plaintiff believes that, from the information disclosed by McGregor, it was obviously in McGregor's self-interest to defend on the merits any action brought by Gibbons Green against Faberge, then McGregor's motivation to defend the anticipated lawsuit should have been equally obvious to the other Faberge shareholders. Moreover, plaintiff has failed totally to support her supposition that this alleged omission was material.

For the above stated reasons, the Court does not agree with plaintiff's allegation that McGregor omitted a material fact in violation of Section 14(e) of the Williams Act.

### 6. *Shamrock.*

■ Similarly, plaintiff has proffered absolutely no support for her allegation that Shamrock intended to acquire Faberge and that McGregor failed to disclose that information. Plaintiff articulates no basis for her allegation that Shamrock was a potential competitor for Faberge. McGregor disclosed the only relevant transaction—that, on January 13, 1984, McGregor had entered into a contract with Shamrock to acquire its 777,800 shares of Faberge common stock at $32 per share. McGregor was under no obligation to speculate—and to disclose its speculation—as to the intentions of a third party. *See Koppel v. Wien,* 575 F.Supp. 960, 968–69 (S.D.N.Y. 1983), *aff'd in part and rev'd in part on other grounds,* 743 F.2d 129 (2d Cir.1984). *Cf. Reiss v. Pan American World Airways, Inc.,* 711 F.2d 11, 14 (2d Cir.1983) (no duty to disclose merger negotiations).

### 7. *Reduction of Tender Offer Price.*

■ Plaintiff alleges that McGregor failed to disclose that its tender offer price had been "reduced by the liabilities to Faberge caused by the aforesaid employment contracts and the indemnification given to Faberge's directors". This allegation, which has no support in the record, fails to state a claim under Section 14(e).

The Second Circuit has repeatedly emphasized that the Williams Act is concerned with the procedural safeguards available to

shareholders, not "with the substantive terms of takover bids". *Buffalo Forge Co. v. Ogden Corp.*, 717 F.2d 757, 760 (2d Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983). "The fairness or unfairness to a shareholder of a transaction engaged in by a control group is irrelevant under Section 14(e), ... even where that transaction prevents shareholders from an opportunity to sell their shares at a higher price.... Misrepresentation is thus an essential element of a cause of action under Section 14(e)." *Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 4 (2d Cir.1983), *cert. denied*, 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). *See Billard v. Rockwell International Corp.*, 683 F.2d 51, 55 (2d Cir.1982) (tender offeror's ability to make a tender offer at an inadequate price is not actionable under Section 14(e)); *Bucher v. Shumway*, ['79–'80] CCH Fed.Sec.L.Rep. ¶ 97, 142 at 96, 300 (S.D.N.Y.1979) ("an alleged breach of a fiduciary duty cannot be transformed into a federal claim by alleging, in addition, that the breach was not disclosed"), *aff'd*, 622 F.2d 572 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980).

Plaintiff cannot transform her corporate waste and breach of fiduciary duty claims into a federal securities law claim simply by averring that the alleged waste and mismanagement affected the tender offer price, and that McGregor failed to disclose this reduction in price.

Accordingly, since plaintiff has failed to demonstrate that McGregor misstated or omitted any material fact, the Court finds that plaintiff has not stated a claim under Section 14(e) of the Securities Exchange Act of 1934, and grants defendants' motion for summary judgment.

### B. PENDENT PARTY JURISDICTION.

The remaining claims alleged in plaintiff's complaint are state law causes of action, and were brought before this Court under the principles of pendent jurisdiction. Since the Court is dismissing plaintiff's claim under Section 14(e) of the Williams Act—the only federal law claim advanced by plaintiff—and since the remaining causes of action, already the subject of plaintiff's purported derivative action presently pending in New York state court, sound in state law, the Court holds that it does not have jurisdiction over the subject matter of this action. *Sante Fe Industries v. Green*, 430 U.S. 462, 478, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Pollock v. Turnkey Information Processing, Inc.*, CCH Fed. Sec.L.Rep. ¶ 91, 520 at 98, 631 (S.D.N.Y. 1984) [Available on WESTLAW, DCTU database]. Therefore, this case is dismissed as to all defendants in its entirety. The Clerk of the Court is ordered to close this case forthwith.

SO ORDERED.